People v Harris (2025 NY Slip Op 51101(U))

[*1]

People v Harris

2025 NY Slip Op 51101(U)

Decided on July 15, 2025

Criminal Court Of The City Of New York, Bronx County

Moore, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 15, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Lashun Harris, Defendant.

Docket No. CR-027711-24BX

For the Defendant: 
The Legal Aid Society
(by: Mink Aggarwal, Esq.)
For the People: 
Darcel D. Clark, District Attorney, Bronx County
(by: ADA Daniel Beloosesky)

Deidra R. Moore, J.

On November 6, 2024, Lashun Harris (hereinafter referred to as "Defendant"), was arrested and charged with Penal Law ("P.L.") 120.00[1], a class A misdemeanor, and related charges. The Defendant was arraigned the same day and released on her own recognizance.
Defendant moves for dismissal of the accusatory instrument pursuant to Criminal Procedure Law ("C.P.L.") §§ 30.30.[1][b] and 170.30[1][e]. Defendant contends that the statutory speedy trial period has elapsed because the People did not comply with their discovery obligations pursuant to C.P.L. §§ 245.20[1] and 245.50[3].
Upon review and consideration of the submissions, court file and relevant legal authority, the Court finds that the prosecution has not exercised due diligence to disclose all discoverable materials in its possession prior to filing the certificate of compliance. Therefore, Defendant's motion is GRANTED.
 RELEVANT FACTUAL AND PROCEDURAL BACKGROUND
On November 6, 2024, Defendant was arraigned on charges of P.L. 120.00[1], assault in the third degree, and related charges. The case was adjourned to December 18, 2024, for conversion and discovery compliance.
On December 18, 2025, the prosecution was neither converted nor discovery compliant. The case was adjourned to February 10, 2025, again for conversion and discovery compliance.
On February 2, 2025, the prosecution filed and served, off-calendar, a superseding information ("SSI"), certificate of compliance ("COC"), and statement of readiness ("SOR"). The prosecution shared additional discovery and filed a supplemental certificate of compliance ("SCOC") on February 5, 2025.
On February 10, 2025, the case was adjourned to February 25, 2025, for discovery [*2]conference. On February 18, 2025, defense counsel e-mailed the assigned prosecutor a list of outstanding discovery items.
On February 25, 2025, the parties appeared for a discovery conference. Defense counsel made a record that multiple items remained outstanding and objected to the validity of the certificate of compliance. The instant motion schedule was set.
On March 25, 2025, Defendant moved to invalidate the certificate of compliance and dismiss the accusatory instrument pursuant to C.P.L. §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e], as the prosecution was not ready for trial within the statutorily allotted ninety-day period. The People filed their opposition on May 7, 2025; the defense reply followed on June 16, 2025.
While the instant motion schedule was pending, the prosecution served additional discovery and filed supplemental certificates of compliance on March 11, 2025, and May 7, 2025.

LEGAL FRAMEWORK
The prosecution must be ready for trial within ninety days of the commencement of the criminal action where the top count charged is a class A misdemeanor (C.P.L. § 30.30[1][b] and P.L. § 120.00[1]).
The speedy trial clock starts with the commencement of the criminal action—here, the filing of the accusatory instrument (C.P.L. § 1.20[17]; People v. Smietana, 98 NY2d 336, 340 [2002]). The speedy trial clock is tolled when the People file and serve a valid certificate of discovery compliance and statement of trial readiness (C.P.L. §§ 245.50[3] and 30.30[5]). A valid statement of readiness certifies that the People "have done all that is required of them to bring the case to a point where it may be tried" (People v Englund, 84 NY2d 1, 4 [1994]), and should communicate a present state of readiness, "not a prediction or expectation of future readiness" (People v Kendzia, 64 NY2d 331, 337 [1985]).
Before the prosecution may be deemed ready for trial, they must disclose to the defense "all items and information which relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control" (C.P.L. §§ 245.20[1]). Discoverable items possessed by "any New York state or local police or law enforcement agency" are deemed to be in the prosecution's possession (C.P.L. § 245.20[2]). Additionally, the People are required to "make a diligent, good faith effort to ascertain the existence of material or information discoverable under [C.P.L. § 245.20[1]] and to cause such material or information to be made available for discovery where it exists but is not within the prosecution's possession" (C.P.L. § 245.20[2]). However, the People are not required "to obtain by subpoena duces tecum material or information which the defendant may thereby obtain" (id.).
After the People have turned over all materials subject to discovery, they must file with the court and serve on the defense a certificate of compliance, certifying that, "after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery" (C.P.L. § 245.50[1]. Absent "an individualized finding of special circumstances," the People may not validly declare their readiness for trial until they have provided all discoverable material to the defense and filed a proper COC (C.P.L. [*3]§ 245.50[3]).
The defense is required to notify the prosecution regarding "any potential defect or deficiency" with the certificate of compliance—such as missing or incomplete items of discovery—"as soon as practicable" (C.P.L. § 245.50[4][b]). This statutory provision is meant to discourage the defense from strategically waiting to notify the People of missing discovery while "the speedy trial clock ticks loudly in the background" (People v. Ramirez, 75 Misc 3d 931, 935, [Crim Ct, Kings County 2022] [internal citation omitted]).
When the validity of a certificate of compliance is challenged, the burden is on the People to demonstrate that they exercised due diligence to comply with their discovery obligations prior to filing (People v Bay, 41 NY3d 200, 213 [2023]). A court evaluating the prosecution's due diligence should consider, among other case-specific factors, the prosecution's efforts to comply with their discovery obligations; the volume of discovery provided, and the amount of discovery outstanding; the complexity of the case; how obvious missing discovery would be to a prosecutor exercising due diligence; any explanations for the discovery lapse; and the prosecution's response when apprised of missing discovery (id. at 212).

DISCUSSION

I. The Parties' Arguments
A. The Items at Issue
The defense moves to invalidate the February 2, 2025, COC based on multiple items that were not disclosed prior to its filing, including: the complete Aided Report, the activity logs of five officers, property vouchers for property taken from the Defendant, and the complainant's medical records [FN1]
(citing C.P.L. § 245.20[1][e], which requires the prosecution to disclose "[a]ll statements, written or recorded or summarized in any writing or recording, made by persons who have evidence or information relevant to any offense charged or to any potential defense thereto, including all police reports, notes of police and other investigators, and law enforcement agency reports" when those items are in the prosecution's possession and relate to the subject matter of the case); adequate witness contact information for two civilian eyewitnesses (citing C.P.L. § 245.20[1][c], which requires disclosure of "[t]he names and adequate contact information for all [*4]persons other than law enforcement personnel whom the prosecutor knows to have evidence or information relevant to any offense charged or to any potential defense thereto" when this information is in the prosecution's possession and relates to the subject matter of the case); a complete record of the complainant's criminal convictions (citing C.P.L. § 245.20[1][p], which requires disclosure of "[a] complete record of judgments of conviction for all defendants and all persons designated as potential prosecution witnesses pursuant to [C.P.L. § 245.20[1][c]], other than those witnesses who are experts"); and color photographs of the scene and the complainant's injuries (citing C.P.L. § 245.20[1][h], which requires disclosure of "[a]ll photographs and drawings made by a public servant engaged in law enforcement activity").
B. The Defendant's Argument
Defendant argues that some of the items flagged were belatedly disclosed, while others remain outstanding.[FN2]
Items disclosed after the COC's filing include the complete Aided Report (only the first page of this report had been shared), the activity logs of five officers, contact information for two civilian witnesses, and the complainant's medical records from a physician visit which occurred on January 16, 2025 (medical records from the date of the alleged crime remain outstanding). Defendant argues that the Aided Report and the activity log reports were in the prosecution's constructive possession pursuant to C.P.L. § 245.20[2] when the COC was filed. Had the People reviewed the discovery in their possession, as due diligence requires, they would have realized that these items were incomplete or missing prior to filing the COC (Defense Reply at 10-11).
The defense acknowledges that the belatedly disclosed medical records were not in the prosecution's actual possession when the COC was filed but argues that the People have an obligation pursuant to C.P.L. § 245.20[2] to ascertain the existence of and disclose discoverable material "where it exists but is not within the prosecutor's possession, custody, or control." Defendant points out that the Aided Report clearly indicates the complainant was removed to Bronx Care for treatment after EMS responded to the scene, but the prosecution has recounted no attempt to obtain or share the records from the complainant's hospital visit on the day of the alleged incident. To date, the People have shared only records of physical therapy which the complainant received on January 16, 2025 (People's Opposition at 7).
Defendant further contends that the People did not exercise due diligence to obtain the eyewitnesses' contact information prior to filing the COC. Although the complainant can be seen on body-worn camera footage telling officers that his two roommates at the shelter were present during the alleged incident, the prosecution did not meet with the complainant until January 31, 2025, the 86th chargeable day. The People first requested the witnesses' names and contact information from the complainant at this meeting and filed their COC two days later without having disclosed this information. The defense contends that this missing information would have been "obvious" to a prosecutor exercising due diligence (Defense Reply at 9).
Outstanding items include color photographs taken at the scene by an officer and the complete record of the complainant's convictions. Prior to filing the COC, the prosecution disclosed only scanned black and white copies of the photographs taken at the scene, which were part of the NYPD "arrest packet" (Defense Motion at 6). With regard to the complainant's convictions, the defense received only notice that the complainant had three misdemeanor convictions, along with the penal code charge and the dates of conviction for each. Defendant contends that this scant information, which includes neither docket number nor jurisdiction, is insufficient under the statute and does not provide enough information for defense counsel to investigate the matter or subpoena the files (Defense Reply at 11, citing People v Soto, 72 Misc 3d 1153, 1156 [Crim Ct, New York County 2021[ ["While CPL 245.20 (1)(p) does not define 'complete record of judgments of conviction,' the People's disclosure here—devoid even of docket number, jurisdiction, or sentence imposed—is all but meaningless."]).
C. The People's Argument
The People assert that they filed their COC in good faith, after exercising due diligence and making reasonable inquiries to comply with their discovery obligations. The prosecution avers that "prior to filing their COC, the People had shared the vast majority of discoverable materials, apart from those items noted in the supplemental COCs filed on February 5, 2025, and March 11, 2025" (People's Opposition at 5).
First, the People contend that the belatedly disclosed medical records were not in their possession or control and therefore were not discoverable pursuant to C.P.L. § 245.20[1][j] (People's Opposition at 8). Nonetheless, the People argue, they made a diligent, good faith effort to obtain medical records from the complainant, first requesting the records from the complainant when they spoke to him on January 31, 2025, then sending e-mail requests to the complainant's civil attorney on February 3, and February 25, 2025, and speaking with the complainant's civil attorney on February 26, 2025 (People's Opposition at 7).
Similarly, with regard to the contact information for the civilian eyewitnesses, the People contend both that they were not required to ascertain the existence of the two civilian eyewitnesses, and that they made diligent, good faith efforts to obtain and disclose these witnesses' contact information. The People met with the complainant on January 31, 2025, and requested these witnesses' contact information; the complainant responded that he would need time to get this information, as the witnesses were his former roommates (People's Opposition at 10). The People shared this information upon receiving it on February 4, 2025
With regard to the belatedly disclosed activity logs, the People recount that on December 3, 2024, they sent an e-mail to the 46th precinct, mistakenly requesting the memo books of officers involved in an unrelated arrest. The People realized their error on February 1, 2025, prior to the filing of the COC, and requested the correct activity logs from the 46th precinct. The People received the correct activity logs on February 3, 2025, and shared them with the defense the same day. Similarly, the People did not realize that they had disclosed an incomplete copy of the Aided Report until receiving discovery objections from the defense on February 18, 2025. The People then promptly began efforts to obtain the full report, and disclosed the report upon receiving it, on February 26, 2025.
The People note that they shared scanned black-and-white copies of the color photographs of complainant's injuries taken by the arresting officer. Additionally, the People [*5]shared photographs taken by the complainant which are "similar" to those taken by the arresting officer and also depict the complainant's injuries (People's Opposition Exhibit 9). The People note that they did not realize that they had not disclosed the original color photographs taken by the arresting officer until May 1, 2025, while responding to Defendant's instant motion; the People then obtained these photographs and shared them with the defense on May 7, 2025.
II. The Court's Analysis
A. Validity of the February 2, 2025, Certificate of Compliance
The People have not established that they exercised due diligence and made reasonable inquiries to comply with their discovery obligations prior to filing the February 2, 2025, COC. While the People emphasize that they acted in good faith and that any errors or omissions were inadvertent, the Court of Appeals has made clear that good faith is a necessary but not sufficient prerequisite to a valid certificate of compliance (People v Bay, 41 NY3d 200, 212 [2023] ["the plain terms of the statute make clear that while good faith is required, it is not sufficient standing alone and cannot cure a lack of diligence"]; see also (People v Teh Cheng, 2025 NY Slip Op 25145, 1 [1st Dept] ["the court erred in using a good faith-only standard. The court did not consider whether the People exercised due diligence within the meaning of CPL 245.50, that is, whether they made 'reasonable efforts to comply with [the] statutory directives,' and 'ma[de] reasonable inquiries to ascertain the existence of material and information subject to discovery''" quoting Bay, 41 NY3d at 211]).
In the instant matter, the People did not make reasonable efforts to comply with their discovery obligations. C.P.L. § 245.10[a][ii] requires the People to disclose automatic discovery within thirty-five calendar days after arraignment when the defendant is at liberty.[FN3]
Here, the People first shared discovery with the defense on January 30, 2025 (People's Opposition Exhibit 1), the eighty-fifth day after arraignment. The People filed their certificate of compliance on February 2, 2025, the eighty-eighth chargeable day in the case, despite knowledge that they awaited activity logs for the correct officers and contact information for two civilian witnesses. The People describe meager efforts to obtain and disclose discovery prior to the COC's filing; they note an e-mail request made to the precinct on December 3, 2024, a meeting with the complainant on January 31, 2025, and an e-mail to the complainant's civil attorney on January 31, 2025.
The Court disagrees with the People that the eyewitnesses' contact information was not discoverable, as the prosecution has a duty under C.P.L. § 245.20[2] to ascertain the existence of and disclose discoverable material outside their possession. Pursuant to C.P.L. § 245.20[1][c], the complainants' roommates, who were present in the room at the time of the alleged incident, clearly had "evidence or information relevant to [the] offense charged." The existence of the witnesses was known to law enforcement personnel since the date of the incident and would have been known to the prosecution upon review of the body-worn camera footage in the [*6]People's possession. The contact information for the witnesses is not information that the defense could have reasonably subpoenaed, as it was the complainant who possessed this information. Nonetheless, the People recount no attempt to obtain these witnesses' contact information until January 31, 2025.
The prosecution acknowledges multiple inadvertent errors in its discovery gathering, including the disclosure of an incomplete Aided Report [FN4]
and the request for activity logs from an unrelated arrest. Additionally, the People acknowledge that they did not realize that the color photographs taken by an officer at the scene had not been disclosed until May 1, 2025 (People's Opposition Exhibit 9), although Defendant notified the People of this omission via e-mail on February 18, 2025 (Defense Motion Exhibit C). Taken together, these errors and omissions evoke a last-minute attempt to toll the speedy trial clock, rather than a diligent effort to timely review and disclose complete discovery.
B. The Medical Records and the Prosecution's Duty under C.P.L. § 245.20[2]
The discoverability of medical records such as those at issue here is an unsettled question. Medical records in the People's possession or which the People intend to introduce at hearing or trial are plainly discoverable, as are records of exams made at the direction of law enforcement personnel and records made by a witness whom the prosecution intends to call at hearing or trial (C.P.L. § 245.20[1][j]. With respect to medical records that do not meet these criteria, C.P.L. § 245.20[2] mandates that "[t]he prosecutor shall make a diligent, good faith effort to ascertain the existence of" and make available material discoverable under C.P.L. § 245.20[1], "where that discovery exists but is not within the prosecutor's possession, custody or control." However, C.P.L. § 245.20[2] further provides that "the prosecutor shall not be required to obtain by subpoena duces tecum material or information which the defendant may thereby obtain."
The People contend that they had no obligation here to obtain and disclose any of the complainant's medical records, as these records were not in the People's custody and the complainant was not examined at the request or direction of law enforcement (People's Opposition at 8-9, citing, among others, People v Hutchinson, 194 NYS 3d 893 [Crim Ct, Bronx County 2023] [holding that the People were not required to obtain and disclose records from St. Barnabas Hospital in a prosecution for misdemeanor assault]).
Defendant counters that the medical records from the date of the incident are material to a key issue in the case, the complainant's alleged injuries. Because the complainant was removed from the scene to Bronx Care immediately after the incident, these records would illuminate the cause, nature, and extent of the complainant's injuries (Defense Reply at 8). Defendant further argues that the People have an obligation pursuant to C.P.L. § 245.20[2] to exercise due diligence to obtain and share discoverable materials outside their possession (citing, among [*7]others, People v. Haggan, 85 Misc 3d 1224(A) [Sup Ct, New York County 2025] [holding that, although the medical records from a private hospital were not in the People's possession, the People were nonetheless "required to make a diligent, good faith effort" to ascertain the existence of and share this material]).
In the instant matter, the Court finds that C.P.L. § 245.20[2] required the People to make a diligent, good faith effort to obtain and disclose the complainant's medical records from the date of the alleged incident [FN5]
(See People v Ajunwa, 75 Misc 3d 1220(A) [Sup Ct , Bronx County 2022] ["the People were only required to make a diligent, good faith effort to cause these records to be made available for discovery . . . Here, however, they failed to establish that they made any such efforts before filing their COC."]; People v Hernandez, 80 Misc 3d 1035, 1040 [Crim Ct, Bronx County 2023] ["insofar as medical records are not within the People's control, nor any law enforcement entity under their direction, C.P.L. § 245.20[2] requires the prosecution to act diligently and in good faith to ascertain the existence of discoverable records and to cause them to be made available"]). Items possessed by the prosecution revealed that the complainant had been treated at the scene by EMS, then removed to Bronx Care (People's Opposition at 9; Defense Reply Exhibit AA). The prosecution's sole attempt to obtain medical records consisted of an e-mail to the complainant's civil attorney, two days before the COC's filing, requesting "medical records" for the complainant (People's Opposition Exhibit 7). The prosecution made no specific attempts to obtain the Bronx Care medical records from November 6, 2024, and issued no subpoenas in the matter (See People v Ajunwa, 75 Misc 3d 1220(A) [Sup Ct , Bronx County 2022] [due diligence not demonstrated where the People issued a subpoena for medical records only after filing the COC]; People v Kingsberry, 81 Misc 3d 1212(A) [Crim Ct, Bronx County 2023] [due diligence demonstrated where the People timely issued two subpoenas]). While the People contend that, pursuant to C.P.L. 245.20[2], they are "not required to obtain by subpoena duces tecum material or information which the defendant may thereby obtain," a real question exists as to whether Defendant could successfully subpoena these materials (People v Haggan, 85 Misc 3d 1224(A) [Sup Ct, New York County 2025] ["[the] People must exercise diligence in obtaining medical records; such records are presumably unavailable to a defendant accused of assaulting the patient" citing Hernandez, 80 Misc 3d 1035]). Consequently, the People did not fulfill their discovery obligations with regard to the medical records pursuant to C.P.L. § 245.20[2].
C. Conclusion
While due diligence under Bay does not require perfect compliance, the People do not carry their burden to establish that they acted with the requisite due diligence prior to filing the [*8]February 2, 2025, COC, and the February 5, 2025, SCOC. The People do not recount timely, diligent efforts to obtain and disclose all discoverable material in their possession prior to the COC's filing. Moreover, the People did not make reasonable inquiries under C.P.L. § 245.20[2] to obtain and disclose discoverable material outside their possession, despite being alerted to the existence of this material in other items of discovery. Finally, color photographs of the complainant's injuries remained outstanding until May 7, 2025, despite the prosecution having been alerted to the issue on February 18, 2025.
The People argue that any deficiencies were inadvertent and cured by subsequent supplemental filings. While supplemental certificates of compliance are permissible under C.P.L. § 245.50[1], they cannot retroactively validate a prior deficient COC (People v. Bay, 41 NY3d 200, 204 [2023] ["Post-filing disclosure and a supplemental COC cannot compensate for a failure to exercise diligence before the initial COC is filed."]).
Therefore, the Court finds that the initial COC filed on February 2, 2025, and SCOC filed on February 5, 2025, were invalid, and their accompanying statements of readiness were illusory.

 THE CPL § 30.30 CALCULATION
The first day counted for speedy-trial purposes is November 7, 2024, the day following the commencement of the criminal action [FN6]
(People v Stiles, 70 NY2d 765, 767 [1987]]. The prosecution filed and served a COC on February 2, 2025, and an SCOC on February 5, 2025. However, as discussed supra, the COC and SCOC were invalid and failed to toll the speedy trial clock. The prosecution served additional discovery and filed a supplemental certificate of compliance on March 11, 2025, after the instant motion schedule was set. Consequently, the speedy trial clock was first tolled when the instant motion schedule was set on February 25, 2025 (November 7, 2024 — February 25, 2025 = 111 days charged). Accordingly, 111 days are chargeable to the People, and their ninety-day speedy trial period has elapsed.

CONCLUSION
Upon review and consideration of the submissions, court file and relevant legal authority, Defendant's motion to dismiss pursuant to CPL §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e] is GRANTED.
This constitutes the opinion, decision, and the order of the Court.
Dated: July 15, 2025
Bronx, New York
Hon. Deidra R. Moore, J.C.C.

Footnotes

Footnote 1:Though the defense cites C.P.L. § 245.20[1][e] when discussing the discoverability of the complainant's medical records, C.P.L. § 245.20[1][j] requires the disclosure of "[a]ll reports, documents, records, data, calculations or writings, including but not limited to preliminary tests and screening results and bench notes and analyses performed or stored electronically, concerning physical or mental examinations, or scientific tests or experiments or comparisons, relating to the criminal action or proceeding which were made by or at the request or direction of a public servant engaged in law enforcement activity or which were made by a person whom the prosecutor intends to call as a witness or a pre-trial hearing, or which the prosecution intends to introduce at trial or pre-trial hearing" that relate to the subject matter of the case and are in the "possession, custody or control of the prosecution or persons under the prosecution's direction or control."

Footnote 2:At the time of Defendant's motion to dismiss, the color photographs of the complainant's injuries had not yet been disclosed (Defense Motion at 6). The prosecution subsequently shared these photographs with the defense on May 7, 2025, and filed a supplemental certificate of compliance the same day (People's Opposition Exhibit 9).

Footnote 3:C.P.L. § 245.10[a] allows the prosecution an additional thirty days to serve automatic discovery when the discovery is exceptionally voluminous, or where, "despite diligent, good faith efforts," the materials are not in the People's actual possession.

Footnote 4:The missing pages of the Aided Report contained substantive information, including a summary of the complainant's statement to law enforcement personnel at the scene which arguably differs from the facts alleged in the superseding information (Defense Reply Exhibit AA).

Footnote 5:The prosecution's COC, dated February 2, 2025, lists "medical records" under "tangible items the people plan to present at trial." Thus, the complainant's outstanding medical records may be plainly discoverable pursuant to C.P.L. § 245.20[1][j], although it is unclear from the People's COC which medical records they planned to introduce. In any case, the prosecution's intent to introduce some of the complainant's medical records weighs in favor of a finding that due diligence under C.P.L. § 245.20[2] required the People to at least attempt to obtain the hospital records from the date of the alleged incident.

Footnote 6:Put another way, for C.P.L. § 30.30 purposes, the "count-forward method" is used, counting forward from the day the criminal action is commenced, with the date of commencement counted as "day zero," (People v Morrison, 85 Misc 3d 1272(A) [Crim Ct, Bronx County 2025]).